**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**LEWIS DeCARLO**                                                                    **PLAINTIFF**


**VERSUS**                                           **CIVIL ACTION NO.  2:03cv11-KS-JMR**


**BONUS STORES, INC. d/b/a BILL'S DOLLAR**
**STORES, INC.; JIMMY A. SCHAFER;**
**And WILLIAM FIELDS**                                                           **DEFENDANTS**



**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the separate Motions for Summary Judgment

filed on behalf of Bonus Stores, Inc. ("Bonus") **[#65]**, Jimmy Schaffer ("Schaffer")**[#69]**,

and William Fields ("Fields")**[#67]**.  The court having reviewed the motions, the

responses, the briefs of counsel, the authorities cited, the pleadings and exhibits on file

and being otherwise fully advised in the premises, finds as follows, to wit:



**PRIOR PROCEEDINGS AND FACTUAL BACKGROUND**

This matter was commenced by the plaintiff's filing of his Complaint on January

10, 2003, alleging wrongful termination from his position with Bill's Dollar Stores.  The

complaint named as defendants Bonus Stores, Inc. d/b/a Bill's Dollar Stores, Inc.;

Bauger HF, d/b/a Icelanders Store, Inc., a shareholder of Bonus Stores; Jon Asgeir

Johannesson, President of Bauger; Tryggyi Jonsson and Willima Fields, who are, or

were, members of the Board of Directors of Bonus; and Jimmy A. Schafer, former CEO

of Bonus Stores.

Bonus Stores filed for bankruptcy protection in August 2003 and this case was stayed until a stipulation allowing the plaintiff to pursue his claims in this civil action was entered in March of 2005.  The case was reactivated in July of 2005.  Shortly thereafter, defendant  Bauger HF, d/b/a Icelanders Store, Inc., was dismissed on its motion after acknowledgment by the plaintiff that such was appropriate.  The court dismissed both Jonsson and Johannesson in an order dated February 3, 2006, for lack of *in personam* jurisdiction.  The remaining defendants, Bonus, Schaffer and Fields, have now moved for summary judgment.

The plaintiff, Lewis DeCarlo, is an adult resident citizen of the state of Tennessee.  DeCarlo was an employee of Bonus Stores, Inc., serving as the Vice President of Store operations beginning on or about October 8, 2001, until his termination on May 31, 2002.  DeCarlo did not have a written employment contract even though Bonus contemplated entering a two year agreement with him and went so far as to draft the agreement.  However, it was never consummated.

Defendant William Fields is an adult resident citizen of the state of Texas.  At all relevant times, Fields was a member of the Board of Directors for Bonus Stores, Inc.  The plaintiff had no direct relationship with William Fields during his employment.  After he was terminated, DeCarlo alleges that Fields tried to intimidate him into settling his employment issues and threatened to interfere in his (DeCarlo's) future attempts to secure employment.

At all material times, defendant Schaffer was the President and Chief Executive Officer of Bonus Stores, Inc., headquartered in Columbia, Mississippi.  Schaffer had

2

previously been the CEO of Bonus Stores of Florida, Inc. ("Bonus Florida"), prior to the formation of Bonus Stores, Inc.  This company, which is one of the defendants here, was created as a Delaware corporation and was  formed for the purpose of purchasing Bill's Dollar Stores out of bankruptcy.

While he was in Florida as CEO of Bonus Florida, Schaffer had formed another company in which he owned a 50% interest, Retail Services, Inc. ("Retail Services"). This business purchased old fixtures from Wal-Mart, refurbished them and sold them to Bonus Florida.  After Schaffer moved to Mississippi as CEO of Bonus, Retail Services continued in the same business of purchasing and selling the refurbished fixtures to the new company, defendant Bonus.

In April 2002, DeCarlo began an examination of purchase invoices after Schaffer expressed a dissatisfaction with the profit and loss statements of Bonus.  DeCarlo was not aware of the business relationship of Retail Services/Bonus and Schaffer's connections to Retail Services until that time.  During his investigation, DeCarlo discovered the relationship and information which appeared to indicate that Retail Services had been billing Bonus for fixtures that were never delivered.

Decarlo reported what he considered suspicious transactions to the Chief Financial Officer and Secretary to the Board of Directors for Bonus, Guy Heyl.  Heyl allegedly told DeCarlo to "lay low" while he (Heyl) investigated the matter.  DeCarlo asserts that immediately after reporting the transactions, Bonus, through Schaffer, began a course of harassment and retaliation.  DeCarlo contends that he reported this conduct to several Board members by e-mail and again when, during the course of the investigation, he was questioned about his discovery and knowledge of the Retail

3

Services transactions by members of the Board in early May of 2002.

On May 31, 2002, DeCarlo was terminated by Schaffer at the direction of the Board of Directors of Bonus Stores.  Schaffer testified in his deposition that when he terminated DeCarlo, he had no knowledge that DeCarlo had told Heyl of possible wrongdoing by him (Schaffer).  Schaffer has also testified that the process to terminate DeCarlo had actually begun at a Board meeting in January or February of 2002 and that the Board had actively been searching for someone to replace DeCarlo since that time.  A replacement had been found and was apparently hired immediately upon DeCarlo's termination.

After DeCarlo reported the allegedly suspicious transactions between Bonus and Retail Services, Bonus hired the accounting firm of Ernst and Young to audit all of the transactions between the two companies.  In the meantime, Schaffer was suspended by Bonus for an apparent conflict of interest as some of the Board members were not aware of the Bonus/Retail Services business dealings until this incident.  Schaffer never returned after his suspension and was ultimately terminated in July of 2002.  Later, according to Schaffer's deposition testimony, the audit showed no improprieties in the Bonus/Retail Services transactions.

The crux of DeCarlo's complaint is that he was wrongfully terminated from his employment with Bonus as a result of his reporting illegal financial transactions by the company's former President, defendant Jimmy Schafer.  Also contained in the body of the complaint, but not pled separately, is a claim that "[o]n information and belief, the Defendants have interfered with DeCarlo's contractual relations and future employment opportunities."

4

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law

5

will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalia*n, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented,

the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).


## WRONGFUL DISCHARGE

The plaintiff contends that he was wrongfully discharged for reporting allegedly illegal financial transactions involving Schaffer.  Mississippi is an employment-at-will state which means that an employee such as DeCarlo, not subject to an employment contract, can be terminated for a good reason, a bad reason or no reason at all.  *See Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086 (Miss. 1987).  The only caveat to this

is that the termination must not run afoul of anti-discrimination laws or of the two public policy exceptions to the at-will doctrine recognized by Mississippi courts.  Those exceptions apply to "(1) an employee who refuses to participate in an illegal act . . .; [and] (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else."  *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So.2d 603, 607 (Miss. 1993).  The plaintiff contends that he is subject to the second of the *McArn* exceptions, the reporting of illegal acts.

The defendants argue that in order to come under the reporting of illegal acts exception of *McArn* as the plaintiff is attempting to do, the illegal activity must be by the employer and the activity must be subject to criminal penalties.  Here, they assert that the allegedly improper conduct was by Schaffer, a co-employee, not by Bonus as the employer.  Secondly, they contend that the allegedly improper financial transactions were not criminal in nature, but, if anything, merely a conflict of interest addressable by civil remedies, not criminal penalties.  Finally, they argue that regardless of the activity reported, the plaintiff has failed to show a causal relationship between his reporting of same and his termination.

The plaintiff responds by asserting that he has offered proof sufficient to create a jury issue as to whether he was terminated for reporting illegal activity.  He seems to be asserting that the jury is the proper entity to determine if the activity related to the Bonus/Retail Services transactions was in fact illegal as well as whether his reporting them was the reason he lost his job.  In support of his argument, he contends that the Mississippi courts have never definitively held that the *McArn* exceptions are limited only to illegal acts by the employer and not acts by co-employees.  He also asserts that

8

the Mississippi courts have not limited "illegal acts" to only activity which creates liability for criminal penalties.

## ILLEGAL/CRIMINAL ACT

The plaintiff contends that he reported illegal activity of defendant Schafer which led to his own termination.  The defendants contend that the activity reported by DeCarlo in which Schafer was involved did not constitute an "illegal act," and that the plaintiff has only referred to the acts as "illegal" without offering any legal citation to a criminal statute that was violated.  The defendants go so far as to assert that, in fact, the acts reported do not rise to the level of criminal activity.

It is without question that the acts reported must be "illegal" in order for the plaintiff to come under the *McArn* exceptions.  An illegal act, in the context of *McArn,* is one which necessarily "warrant[s] the imposition of criminal penalties, as opposed to mere civil penalties."  *Hammons v. Fleetwood Homes* 907 So.2d 357, 360 (Miss. 2004); *see also Wheeler v. B.L. Development Corp.*, 415 F.3d 399, 404 (5th Cir. 2005)(reported activity must be criminal to implicate the *McArn* exceptions).

The plaintiff reported that Schafer's company, Retail Services, appeared to have billed Bonus and received payment for merchandise that was not delivered.  The defendants seem to want to limit DeCarlo's report to only the fact that Retail Services was co-owned by Schafer and that Schafer, as CEO of Bonus had an apparent conflict of interest in approving business transactions with Retail Services, of which he was a

co-owner.  DeCarlo's report goes beyond that as pointed out above.[1]

The defendants' assertions that DeCarlo did not report illegal activity on the part of Schafer is disingenuous.  Clearly, the allegation that Schafer's company, Retail Services, had received money from Bonus for merchandise that it did not deliver smacks of criminality.  Such acts would amount to criminal fraud and quite likely misappropriation and embezzlement.  These are acts which would warrant the imposition of criminal penalties against Schafer.  However, the question is whether the *McArn* exceptions apply to DeCarlo's reporting of the allegedly illegal acts of Schafer.

## ILLEGAL ACTS - EMPLOYER OR CO-EMPLOYEE?

The defendants argue that criminal acts must be alleged and reported on the part of the employer to receive the protection of *McArn*.  The plaintiff argues that no Mississippi case has definitively limited *McArn* to illegal acts of the employer as opposed to a co-employee.  To support this theory, the plaintiff makes an agency argument, i.e., Schafer, as an employee of Bonus, is the agent of Bonus and thus his actions are imputed to Bonus.

Contrary to the plaintiff's argument, the court has been shown no Mississippi case allowing the invocation of the *McArn* exceptions in any situation where illegal activity was alleged only on the part of a co-employee and not attributable to the

---

[1]   There is argument on behalf of both parties relating to alleged reporting of the failure of Bonus to pay sales taxes on the Retail Services transactions and that Schafer was involved in kickbacks on certain real property leases.  There is no competent evidence before the court that DeCarlo reported anything about sales taxes prior to the decision to terminate him.  Neither is there evidence that DeCarlo knew or reported anything about the alleged lease kickbacks as he had no information upon which to make such allegations until after he was terminated.  Neither one of these issues create a genuine issue of fact sufficient to survive summary judgment.

employer.  This court is of the opinion that the illegal act reported must be that of the employer to invoke the protection of *McArn*.  Indeed, *McArn*'s specific language limits its creation of the public policy exceptions to situations of "reporting illegal acts of his employer ."  Further, at least one federal district court opinion in Mississippi dismissed a plaintiff's claim where alleged illegal activity on the part of a co-employee as opposed to an employer was reported.  *See Hawkins v. Microfibers, Inc.*, 1995 WL 1945438 (N.D. Miss. 1996).  The plaintiff has pointed to no authority where the courts have held otherwise.

The court finds that to invoke the protections of *McArn*, an employee who is allegedly terminated for reporting illegal acts must have been reporting the illegal acts of his employer as opposed to discrete acts of a co-employee, not attributable to the employer.  If the court accepted the plaintiff's theory, an employee who reports that a co-employee got a speeding ticket on his private time and is then terminated for any reason could claim the protections of *McArn*.  This would be an absurd result.

However, if the co-employee is performing illegal acts on behalf of and with the knowledge or consent of his employer which benefits the employer, a different result may ensue, for a corporation acts through its employees.  In this situation, where the reported illegal activity is in direct opposition to the good of the employer, benefits only the employee, and is consummated without the knowledge or consent of the employer, to allow the protections of *McArn* would lead to the absurd result mentioned above.  The plaintiff has failed to demonstrate that a genuine issue of material fact exists regarding whether he reported illegal acts of his employer, he did not.

Neither do the plaintiff's claims of wrongful discharge against Schafer and Fields

11

gain traction.  Such suits are amenable against only the employer.  *See McArn, supra;*

*Hawkins v. Microfibers, Inc., supra; Roberts v. Consolidated Pipe & Supply Co., et al.,*

No. 3:00cv511-W-S (S.D. Miss. 2001); and *Pratt v. Reliant Pharmacy Service, et al.,*

No. 2:02cv284-M-B (N.D. Miss. 2003).


## INTERFERENCE WITH FUTURE EMPLOYMENT OPPROTUNITIES

         As pointed out above, the plaintiff has arguably, however inartfully, stated a claim

for interference with his contractual relations and future employment opportunities.

However, he did not respond to Schafer's motion on this claim and therefore the motion

is confessed as to Schafer.  Further, according to his brief in response to Fields'

motion, DeCarlo's claim concerns just future contracts and employment.  He does not

claim that Fields interfered with an existing contractual relationship with a third party.

DeCarlo's allegations are based on Fields' alleged threats to see that DeCarlo never

got a job, to ruin his references and to make sure that DeCarlo did not get past

interviews.

         The plaintiff correctly states that to prevail on a claim for tortious interference

with a prospective contract, DeCarlo must offer proof of four elements: (1) There was a

reasonable probability that he would have entered into an employment contractual

relationship; (2) Fields acted maliciously by intentionally preventing the relationship

from occurring for the purpose of harming DeCarlo; (3) Fields' acts were done without

right or justifiable cause; and (4) DeCarlo suffered harm or damage as a result of

Fields' conduct.  *Cockerham v. Kerr-McGee Chemical Corporation,* 23 F.3d 101, 105

(5th Cir. 1994) (citations omitted).

To support this claim as to Fields, the plaintiff offers the following as to each of the four elements he is required to prove; (1) he had never had any difficulty getting a job in retail management before he was recruited by Bonus; (2) Fields threatened to interfere with his job prospects if he refused to sign the July 15, 2002 settlement agreement; (3) there was no justifiable reasons for Fields to interfere between DeCarlo and prospective employers; and (4) he began working for Bonus with a salary of $112,000.00 and at the time of his termination he was making $125,000.00 with a lucrative bonus package.  When he could not get a job after diligent efforts, he began working as a volunteer for the Germantown Baptist Church.  He is now a permanent employee with a salary of $35,000.00 per year and no benefits.   The plaintiff ultimately argues that "Fields' threats and DeCarlo's failure to obtain another comparable position with his years of experience are sufficient to defeat summary judgment."

The plaintiff's proffer in response to the motion for summary judgment is simply insufficient.  His arguments are nothing more than speculation and conjecture and would require a jury to engage in the same to deliver a verdict on his behalf.  The plaintiff has failed to present an issue of material fact for resolution by the jury concerning this claim.  Nor has he provided any argument or authority to hold Bonus liable on this claim.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motions for Summary Judgment filed on behalf of Bonus Stores, Inc. **[#65]**, Jimmy Schaffer**[ #69]**, and William Fields **[#67]** are Granted and the plaintiff's complaint is Dismissed with

prejudice.

A separate judgment will be entered herein in accordance with Rule 58, Fed. R. Civ.P.

SO ORDERED AND ADJUDGED this the 12th day of May, 2006

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE